UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| M.H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. 1:18-cv-2633 |
| vs. | ) |
| | ) |
| BUTLER UNIVERSITY, LAMBDA CHI ALPHA FRATERNITY, INC., and ALPHA-ALPHA ZETA ALUMNI OF LAMBDA CHI ALPHA, INC., | ) ) ) ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff "M.H.," by counsel, files this Complaint and Demand for Jury Trial against Defendants Butler University ("Butler"), Lambda Chi Alpha Fraternity, Inc. ("LCA"), and Alpha-Alpha Zeta Alumni of Lambda Chi Alpha, Inc. ("AAZ").

### I. PARTIES, VENUE, AND JURISDICTION

1. M.H. is a citizen of Virginia and was a student at Butler between August 2016 and May 2017. This action is brought anonymously for the following reasons: Plaintiff seeks to preserve her privacy in this sensitive and highly personal matter; she wishes to avoid further embarrassment and psychological damage, as this case concerns a rape and sexual assault, which is a matter of utmost intimacy; identification of Plaintiff poses a high risk of mental harm; and there is no risk of prejudice to Defendants from Plaintiff proceeding anonymously, because Defendants and counsel will be fully aware of the identity, age, and address of the Plaintiff.

2. Butler is a private non-profit university incorporated under the laws of Indiana with its principal place of business in Indianapolis, Indiana.

3. Butler receives federal financial assistance.

y

4. LCA is an Indiana non-profit corporation with its principal place of business in Carmel, Indiana. LCA is the controlling body of the national Lambda Chi Alpha Fraternity and owns, controls, operates, and provides policies and rules for its local chapters. Prior to January 17, 2017, LCA owned, controlled and operated a local chapter at Butler University.

5. AAZ is an Indiana non-profit corporation with its principal place of business in Indianapolis, Indiana. AAZ owns, manages, operates and maintains the property located at 4721 Sunset Ave., Indianapolis, IN 46208, the former fraternity house of LCA's Butler chapter.

6. This court has subject matter jurisdiction over M.H.'s Title IX claim pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1681. This court has supplemental jurisdiction over M.H.'s claims arising under state law pursuant to 28 U.S.C. § 1367.

7. In the alternative, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the Plaintiff and all of the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest or costs.

8. This Court has personal jurisdiction over each Defendant, and venue is proper pursuant to 28 U.S.C. § 1391, because Defendants are or were located in Indiana, Defendants' unlawful actions all occurred within the Southern District of Indiana, and the events giving rise to the claims occurred in the Southern District of Indiana.

## II. FACTUAL ALLEGATIONS

9. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

10. At all material times, M.H. was a female student at Butler and a member of the Butler women's lacrosse team with both athletic and merit-based academic scholarships.

11. During the fall semester of 2016, LCA's Butler chapter was on probation, due to various violations, and was prohibited from hosting social events with alcohol.

12. On or about the evening of December 3, 2016, M.H. attended a party at the LCA Butler fraternity house.

13. LCA's Butler chapter served alcohol to M.H. and other guests at the party, including underage female students.

14. M.H. left the party shortly after midnight on the morning of December 4, 2016, to return to her dorm with a friend. She then got ready for bed and watched television with a friend at her dorm.

15. At or around 2:00 a.m. on December 4, 2016, M.H. returned to the LCA Butler chapter fraternity house in order to locate a friend who was still at the party and who needed help getting home.

16. M.H. found her friend at the LCA Butler fraternity house lying on a couch, drunk, and being tended to by another student. At one point, a male Butler student, "M.K.," entered the room and asked M.H. to come to his room to help him find a necklace which belonged to one of the women present. M.H. followed M.K. to his room.

17. M.K. was a student at Butler and a member of LCA's Butler chapter.

18. M.K. was a member of the Butler football team from fall 2015 through fall 2016.

19. When M.H. and M.K. entered M.K.'s room, M.K. shut the door and locked it. He pushed M.H. on his bed and started kissing her. M.K. asked M.H. what she was "comfortable doing." M.H. told him, repeatedly, that she was not going to have sex with him. M.K. said, "We'll see."

20. M.H. told M.K. that she needed to leave and get back to her friend. M.K., who was significantly larger, stronger, and heavier than M.H., laid on top of her with his forearm holding her down, preventing her from leaving.

21. M.K. took off M.H.'s pants and underwear and performed oral sex on her, without her consent.

22. M.K. vaginally penetrated M.H., without her consent.

23. M.H. turned her face into a pillow, crying during the sexual assault.

24. Eventually, M.K. stopped his attack and released M.H. M.H. got up, put her pants back on, left the room, and eventually went home.

25. On December 5, 2016, M.H. informed her Butler math teacher that she had been raped. M.H.'s math teacher reported the incident to Stacie Colston Patterson, who was then employed as the Title IX Coordinator for Butler.

26. M.H. met with, spoke with, and corresponded with Patterson repeatedly during December 2016, January 2017, and February 2017 about the sexual assault by M.K.

27. On or about January 16, 2017, LCA suspended its Butler chapter until at least spring 2021.

28. Following suspension of the LCA Butler chapter, M.K. and other fraternity members were moved to alternate student housing on campus.

29. On January 24, 2017, Patterson sent M.H. an email which stated, in part, "I wanted to let you know that I have received information regarding another report involving [M.K.]."

30. During the fall semester of 2015 and spring semester of 2016, and prior to his rape and sexual assault of M.H., M.K. had raped and/or sexually assaulted another female student ("Jane Doe") on multiple occasions.

31. Doe was a member of the Butler volleyball team. In August of 2016, Doe informed the head coach of the women's volleyball team, Sharon Clark, that she had been sexually assaulted by a member of the Butler football team.

32. A few weeks later at a follow up meeting, Clark informed Doe that Clark needed to report the sexual assault, and that Butler's Title IX office would be reaching out to Doe.

33. In October 2016, Doe reported that she had been sexually assaulted by a Butler football player to her academic advisor, Jen Mann.

34. At no time did Clark or Mann ask Doe to provide the name of the Butler football player who had raped her.

35. At no time did Butler open a Title IX investigation into the sexual assault of Doe.

36. Doe withdrew from Butler on October 23, 2016.

37. At no time before January 24, 2017, did anyone from Butler's Title IX office contact Doe.

38. On January 24, 2017, Patterson emailed Doe asking to schedule a meeting.

39. On February 6, 2017, Doe met in person with Patterson, who was Butler's Title IX Coordinator at the time of the meeting.

40. On February 6, 2017, Patterson told Doe that Patterson had information from Clark that Doe had been sexually assaulted.

41. On February 6, 2017, Doe provided Patterson with information about her sexual assaults, including identifying M.K. as the person who sexually assaulted her.

42. Patterson told Doe on February 6, 2017, that M.K. had a couple of complaints, or that his name had come up before in the context of Title IX investigations.

43. Butler's Title IX office was aware of M.K's fall 2015 and spring 2016 rapes and/or sexual assaults of Doe prior to M.K.'s rape and sexual assault of M.H. At a minimum, Butler failed to timely investigate Doe's complaint in order to identify the name of Doe's attacker.

44. By no later than February 2016, Doe had informed at least 4 members of Butler's volleyball team and 4 members of Butler's football team that M.K. had sexually assaulted her.

45. Butler took no action to protect M.H., or any other female students, from M.K., resulting in M.K's rape and sexual assault of M.H. on December 4, 2016.

46. M.H., M.K., and Doe were all student-athletes at Butler.

47. Butler's athletics programs are subject to governance of the National Collegiate Athletic Association ("NCAA").

48. The NCAA guidebook on "Addressing Sexual Assault and Interpersonal Violence" states that "when a survivor or alleged perpetrator is a student-athlete, athletics must report to appropriate campus offices for resolution and must protect those individuals from retaliation…." It further states that [i]t is essential to protect the survivor from further emotional or physical harm."

49. At no time did Butler's athletic programs protect M.H. or Doe from further emotional or physical harm after they reported being raped. At no time did Butler's athletic programs convene team meetings concerning the sexual assault of either M.H. or Doe.

50. M.H. formally filed a Title IX complaint with Butler on or about February 10, 2017.

51. Butler implemented a no-contact order between M.H. and M.K. beginning on or about February 17, 2017.

52. Butler investigated M.H.'s complaint, held a Title IX hearing on April 19, 2017, and subsequently expelled M.K. from Butler following his unsuccessful appeal.

53. Butler permitted M.K. to remain enrolled as a student residing on its campus until May 2017.

54. M.H., via legal counsel, contacted the Butler University Police Department ("BUPD") on May 18, 2017, for purposes of filing a criminal complaint against M.K., and filed a criminal complaint against M.K. with BUPD on June 8, 2017.

55. BUPD failed to conduct a timely criminal investigation in response to M.H.'s report of rape.

56. Upon information and belief, prior to December 4, 2016, Butler's President, James Danko, instructed BUPD to "back off" when it came to illegal activities taking place at fraternities, following complaints from fraternity presidents about BUPD's handling of investigations against fraternities.

57. M.H. withdrew as a student at Butler after the 2017 spring semester, and was required to attend summer school before transferring to another university in the fall of 2017.

58. According to Butler's 2016 Annual Security Report, there were 12 reports of rape (including 11 on campus), and 5 reports of fondling (4 on campus), in 2016. This was more than double the totals from the previous year, of 5 reports of rape (3 on campus), and 2 reports of fondling (1 on campus), in 2015. From January 1 through August 20, 2018, BUPD has received at least 10 reports of rape.

59. Prior to M.K.'s rape and sexual assault of M.H., Butler was aware of the prevalence of rape and sexual assault on its campus, and fostered an environment in which rape and sexual assault were foreseeable, rampant, uninvestigated, and unpunished.

60. By October 23, 2016, before M.K.'s rape and sexual assault of M.H. on December 4, 2016, at least two Butler administrators were specifically aware that a Butler football player had raped Butler student-athlete Jane Doe.

61. Upon information and belief, before M.K.'s rape and sexual assault of M.H. on December 4, 2016, Butler administrators were specifically aware that M.K. had raped and/or sexually assaulted one or more female Butler students, or, in the alternative, Butler failed to timely investigate M.K.'s identify after being informed of his sexual assault of Doe.

62. Prior to M.K.'s rape and sexual assault of M.H., LCA and AAZ were aware of the prevalence of rape and sexual assault on Butler's campus, the ubiquity of rape and sexual assaults in fraternity houses at Butler and across the country, and the prevalence of underage binge drinking in its fraternity house at Butler.

63. Prior to M.K.'s rape and sexual assault of M.H., LCA and AAZ were aware that LCA's Butler chapter had been fostering a dangerous environment of illegal, illicit, and sexually abusive behavior that was well known by fraternity officials.

64. Upon information and belief, LCA had placed its Butler chapter on probation in the fall of 2016, which included, as a sanction, prohibition against holding parties where alcohol was served.

65. LCA's Butler chapter violated its probation by, among other things, hosting the party serving alcohol on the evening of December 3, 2016, and the early morning of December 4, 2016, where and when M.K. raped and sexually assaulted M.H.

66. Upon information and belief, prior to M.K.'s rape and sexual assault of M.H., LCA, its Butler chapter, and/or AAZ were aware that one or more LCA Butler members, including M.K., had previously raped and/or sexually assaulted one or more female Butler students.

67. Upon information and belief, M.K. "retired" from Butler's football team in November of 2016.

68. By October 23, 2016, after Jane Doe had reported to at least two Butler administrators that she had been sexually assaulted by a Butler football player, it was foreseeable to Butler that if no investigation were undertaken, and no corrective measures were taken against the sexual assaulter, he would rape and/or sexually assault one or more additional female Butler students.

69. LCA and/or AAZ continued to foster and facilitate an environment of sexual assault and dangerous illicit activity (even after the LCA Butler fraternity was placed on probation), without providing reasonable safety measures for invited guests at the LCA Butler fraternity house.

### III.    LEGAL ALLEGATIONS

#### COUNT I:    Violation of Title IX, 20 U.S.C. § 1681 (Butler)

70. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

71. At all relevant times, Butler received federal financial assistance.

72. M.H. had a right to not be subject to sexual discrimination, harassment or abuse while she participated in Butler's educational programs or activities receiving federal financial assistance.

73. Butler administrators had actual notice that M.K. had raped and/or sexually assaulted a least one female student before M.K. raped and sexually assaulted M.H. on December 4, 2016.

74. Alternatively, Butler administrators had actual notice of the rape and/or sexual assaults of Jane Doe and failed to investigate to determine the identity of her attacker.

75. Butler officials and administrators with actual notice had authority to institute corrective measures on behalf of Butler in response to the danger posed by M.K.

76. The problem of rape and sexual assault at Butler was severe, pervasive, and objectively offensive.

77. In response to actual notice of rape and/or sexual assault of Doe, Butler administrators with authority to take corrective measures showed deliberate indifference by taking no responsive action to investigate Doe's allegations, or determine M.K's identity, prior to M.K.'s December 4, 2016, rape and sexual assault of M.H.

78. As a result of Butler's failures to act and deliberate indifference, M.H. was raped and sexually assaulted by M.K.

79. Butler had actual knowledge of M.K.'s rape and sexual assault of M.H. no later than December 5, 2016.

80. M.K.'s rape and sexual assault of M.H. was so severe, pervasive, and objectively offensive that it deprived M.H. of her access to educational opportunities, and resulted in her transfer to another university at significantly greater cost.

81. Butler was deliberately indifferent to M.K.'s rape and sexual assault of M.H. by failing to timely advise her of her options to pursue a criminal complaint and/or seek

professional counseling, failing to timely remove M.K. from campus, and via its campus police department, failing to timely investigate M.H.'s criminal complaint against M.K.

82. M.H. has suffered damages as a direct and proximate cause of Butler's failures to act and deliberate indifference.

### Count II:    Negligence (Butler)

83. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

84. M.H. and Butler had a special relationship based on M.H.'s status as a student enrolled at Butler.

85. Butler and M.K. had a special relationship based on M.K.'s status as a student enrolled at Butler.

86. Prior to M.K.'s rape and sexual assault of M.H. on December 4, 2016, Butler knew or in the exercise of ordinary diligence should have known that M.K. had a history of rape and/or sexual assault, and posed a foreseeable risk of danger to female students at Butler.

87. As of December 4, 2016, it was foreseeable to Butler that M.K. would rape and/or sexually assault one or more additional female Butler students.

88. Butler owed M.H. a duty to protect her from the foreseeable criminal misconduct of M.K.

89. Butler breached its duty by allowing M.K. to continue his enrollment at Butler and have access to female Butler students. Butler eventually expelled M.K., but not until after he had raped and/or sexually assaulted M.H., and then only after M.H. filed and won a Title IX grievance against M.K.

90. As a direct and proximate cause of Butler ignoring Doe's prior allegation of sexual assault by M.K., M.K. was able to rape and sexually assault M.H.

91. M.H. has suffered damages as result of Butler's negligence.

### Count III:    Negligence - Retention and Supervision (against LCA)

92. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

93. LCA was in a special relationship with M.K. based upon M.K.'s membership in LCA and M.K.'s residence in its fraternity house.

94. LCA knew, or in the exercise of reasonable care, should have known, that M.K. had been accused of sexually assaulting a female Butler student prior to December 4, 2016.

95. It was foreseeable that if LCA allowed M.K. to continue his membership with LCA, continue to reside in the Butler LCA house, and continue to attend LCA social events, that M.K. would commit another sexual assault.

96. LCA had a duty to take reasonable precautions to prevent M.K. from becoming a member of LCA and/or revoking M.K.'s membership and residence in the fraternity house.

97. LCA breached that duty by failing to take reasonable precautions to prevent M.K. from committing future acts of rape and/or sexual assault at the LCA Butler fraternity house.

98. LCA was in a special relationship with its Butler chapter based upon the chapter's affiliation with LCA, and LCA's ability to suspend or revoke chapter memberships.

99. By December 4, 2016, LCA knew, or in the exercise of reasonable care, should have known, that its Butler chapter had fostered an environment of sexual assault.

100. By December 4, 2016, it was foreseeable that if LCA allowed its Butler chapter to remain on campus and host social events involving alcohol (including events even after LCA placed its Butler chapter on probation), that a female would be sexually assaulted.

101. LCA owed a duty to females at universities with LCA charters to take reasonable precautions to ensure its local chapters were not fostering environments of sexual assault.

102. LCA breached its duty owed to female students at Butler by not taking reasonable precautions to prevent its Butler chapter from fostering an environment in which a foreseeable act of sexual assault would be committed at an LCA social event.

103. LCA suspended its Butler chapter on or about January 16, 2017, but not until after M.K.'s rape and sexual assault of M.H. had already occurred there.

104. As a direct and proximate cause of LCA's negligence, M.H. was raped and sexually assaulted by M.K.

105. M.H. has suffered damages as a result of LCA's negligence.

### Count IV:     Negligence – Premises Liability (AAZ)

106. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

107. AAZ was in a host-invitee relationship with M.H., based upon her attendance as a guest at a social event at the LCA Butler fraternity house, of which AAZ was the owner.

108. AAZ owed a duty to M.H. as an invitee to the LCA Butler fraternity house and a guest at an LCA social event, to take reasonable precautions to prevent foreseeable criminal acts against her.

109. Rape and sexual assault were foreseeable and dangerous risks at parties involving alcohol at the LCA Butler fraternity house.

110. AAZ knew, or in the exercise of reasonable care, should have known, that permitting and encouraging underage drinking greatly increases the risk of rape and/or sexual assault.

111. By the fall of 2016, AAZ was aware that the social events thrown at the LCA Butler fraternity house fostered and encouraged an environment of dangerous activity and sexual assault.

112. AAZ knew, or in the exercise of reasonable care, should have known that M.K. had been accused of sexual assault of a female Butler student prior to December 4, 2016.

113. As of December 4, 2016, it was foreseeable that female invitees at the Butler LCA fraternity house could be at risk of being raped and/or sexually assaulted, particularly at social events where alcohol was served.

114. AAZ breached its duty to M.H. by not taking any reasonable precautions to protect M.H. from rape and/or sexual assault.

115. As a direct and proximate cause of AAZ's failure to take reasonable precautions to protect her, M.H. was raped and sexually assaulted by M.K.

116. M.H. has suffered damages as a result of AAZ's negligence.

## IV.  RELIEF REQUESTED

M.H. requests the following relief:

a. Compensatory damages, including, but not limited to, any and all pecuniary losses as a result of Defendants' acts or omissions, including costs associated with M.H.'s transfer to another university and costs of medical and/or psychological treatment;

b. Damages for emotional distress, mental anguish, and pain and suffering;

c. Punitive damages;

    d.  All costs and reasonable attorney fees incurred in litigating this action;

    e.  Pre-judgment and post-judgment interest; and

    f.  Any and all other legal and/or equitable relief to which Plaintiff is entitled.

                            Respectfully submitted,

                            */s/ Kathleen A. DeLaney*
                            Kathleen A. DeLaney (#18604-49)
                            Christopher S. Stake (#27356-53)
                            *Attorneys for Plaintiff M.H.*

DeLaney & DeLaney LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
Kathleen@delaneylaw.net
cstake@delaneylaw.net

## **JURY DEMAND**

    Plaintiff, M.H., by counsel, hereby demands a trial by jury on all issues so triable.

                            Respectfully submitted,

                            */s/ Kathleen A. DeLaney*
                            Kathleen A. DeLaney (#18604-49)
                            Christopher S. Stake (#27356-53)
                            DeLaney & DeLaney LLC
                            3646 Washington Blvd.
                            Indianapolis, IN 46205
                            *Attorneys for Plaintiff M.H.*